# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

JULIAN T. STEELE,

|                     |   |                                      |
|---------------------|---|--------------------------------------|
| Petitioner,         | : | Case No. 1:15-cv-349                 |
| - vs -              |   | District Judge Michael R. Barrett    |
|                     |   | Magistrate Judge Michael R. Merz     |
| TERRY TIBBALS, Warden, |   |                                   |
| London Correctional Institution, |   |                        |
|                     | : |                                      |
| Respondent.         |   |                                      |

# SUBSTITUTED REPORT AND RECOMMENDATIONS ON FIRST GROUND FOR RELIEF

This habeas corpus case is before the Court for decision on the merits of Petitioner's First Ground for Relief.

**Petitioner has Forfeited His Objections on Ground Four**

Represented by retained counsel, Julian Steele filed a Petition asserting ten grounds for habeas corpus relief (Petition, ECF No. 1, PageID 8-12). The undersigned recommended dismissing the entire Petition with prejudice (Report and Recommendations, ECF No. 6). Petitioner objected only as to the First Ground for Relief (Objection, ECF No. 8). See, for example,

> The record establishes that the decision of the First District was an
> objectively unreasonable application of *Jackson v. Virginia*, 443

1

> U.S. 307 (1979) in its determination that Petitioner's convictions for **abduction** were based upon sufficient evidence. The procedural postures of Petitioner's state case reveals how the Ohio state courts failed to properly apply *Jackson v. Virginia*, and instead engaged in a game of hot potato with the abduction convictions.

(Objection ECF No. 8, PageID 533, emphasis supplied)

> **CONCLUSION**
>
> Thus, this Court should overrule the Report & Recommendations as it relates to **ground one.**

*Id.* at PageID 537 (emphasis supplied).  The intimidation conviction, the basis of the Fourth Ground for Relief, is mentioned nowhere in the Objection.

After Petitioner filed his Objection, Judge Barrett recommitted the case for reconsideration based on the Objection (ECF No. 9).  In a Supplemental Report and Recommendations, the Magistrate Judge addressed the sole remaining Ground for Relief, Ground One, specifically noting that it was the only Ground on which objection was made  (ECF No. 10, PageID 540).  In objecting to the conclusions in the Supplemental Report, Steele again addressed only the abduction conviction challenged in the First Ground for Relief (See, e.g., ECF No. 11, PageID 552, stating "[t]his Court should overrule the Supplemental R&R as it relates to ground one, . . .")

The recommendation on the First Ground was then withdrawn because the record was incomplete and the Warden was directed to supplement the record (ECF No. 13).  That has now occurred (ECF No. 14), the Warden has filed a Supplemental Answer (ECF No. 15), and the Petitioner has filed a Reply (ECF No. 16).

2

In the Reply, however, the Petitioner argues both the First and Fourth Grounds for Relief, arguing that "[t]he intimidation conviction is not supported by sufficient evidence." (Reply, ECF No. 16, PageID 1891-93.)

As noted above, the original Report recommended dismissing Ground Four with prejudice (ECF No. 6, PageID 519). Petitioner's time to object to that recommendation expired on May 23, 2016, and no objection was made. Although Steele objected on Ground One, that objection does not preserve possible objections to other portions of the Report.

The Sixth Circuit has held that a general objection has the same effect as a failure to file altogether. *Howard v. Sec. of HHS*, 932 F.2d 505 (6th Cir. 1991). The reason is that failure to focus the district court's attention on any specific issues makes the initial reference useless and undermines the purpose of the Magistrate's Act. *Howard*, 932 F.2d at 509. A petitioner who fails to make specific objections to a magistrate judge's report forfeits his right to appeal the aspects of the report to which he did not object. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). The failure to file specific objections is a waiver of right to raise issues on appeal. *Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999). By failing to object to any portion of the initial Report except that portion dealing with Ground One, Steele has forfeited any objections to the recommendation that Ground Four be dismissed. The balance of this Substituted Report will therefore discuss only Ground One.

**Ground One:  Insufficient Evidence to Support Conviction for Abduction**

In his First Ground for Relief, Steele asserts there is insufficient evidence to support his conviction for abduction.  That Ground reads:

> **GROUND ONE:** The Abduction Convictions Violated The Due Process Clause Of The Fifth And Fourteenth Amendment Of The U.S. Constitution Because There Was Insufficient Evidence To Establish Each And Every Element Of The Offense Of Abduction Pursuant To O.R.C. § 2905.02 Beyond A Reasonable Doubt.

(Petition, ECF No. 1.)  The Warden defends this claim on the merits.

In his Reply, Petitioner divides his First Ground for Relief into three sub-claims.  First of all, he claims he was denied due process of law because the First District (1) decided his insufficient evidence claim without examining the trial record and (2) did not give him notice and a meaningful opportunity to defend his insufficient evidence claims.  Next, he asserts that there is on the record as a whole insufficient evidence to convict.  This Report will consider those sub-claims seriatim.

**Sub-claim One:  Denial of Due Process in State Court Consideration of the Insufficient Evidence Claim**

Steele was indicted on one count of abduction in violation of Ohio Revised Code § 2905.02(A)(1) and one count of abduction in violation of Ohio Revised Code § 2905.02(A)(2)(Counts 1 and 2 of the Indictment, State Court Record, ECF No. 3, Exh. 1, PageID 23-24).  This of course provided him with notice of the charges and his initial opportunity to

4

defend as required by the Due Process Clause of the Fourteenth Amendment.[1]

Steele was convicted by a jury and appealed to the First District Court of Appeals, raising a number of evidence-based assignments of error including that the trial court should have granted a motion for judgment of acquittal and that there was insufficient evidence to convict (Assignments of Error One and Two, Appellant's Brief, ECF No. 3, Exh. 6, PageID 47). Steele's Brief contains numerous record citations (See, e.g., PageID 52). Because it reversed and remanded the abduction convictions, the First District found these two assignments of error moot and declined to address them. *State v. Steele*, 2011-Ohio-5479, ¶ 23, 2011 Ohio App. LEXIS 4543 (1st Dist. Ohio 2011).

The State of Ohio appealed to the Ohio Supreme Court on the questions of law embedded in the reversal:  the jury instruction on privilege, the application of the crime of abduction to a police officer, and the plain error question (Memorandum in Support of Jurisdiction, State Court Record, ECF No. 3, Exh. 16, PageID 124).  Steele requested and received the right to file a delayed appeal and raised as a Proposition of Law that "the conviction is against the manifest weight of the evidence." *Id.*  at PageID 172. However, the Ohio Supreme Court did not accept jurisdiction on that Proposition (Entry, State Court Record, ECF No. 3, Exh. 22, PageID 194).  In deciding the issues before it, the Ohio Supreme Court wrote

> **[\*\*P3]** On May 26, 2009, police officer Julian Steele was indicted on ten counts, including abduction, intimidation, extortion, rape, and sexual battery. The charges stemmed from Steele's investigation of a series of six robberies that occurred in the same neighborhood in Cincinnati, Ohio. Shortly after one of the robberies, a resident in the neighborhood saw a vehicle driving suspiciously. The resident provided the vehicle's license-plate

---

[1] There is no Due Process requirement for a state to use a grand jury to initiate felony proceedings.  *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes*, 408 U.S. 665, 687-88 n. 25 (1972); *Gerstein v. Pugh*, 420 U.S. 103 (1975).

> number to police, who linked the vehicle to A.M.
>
> **[\*\*P4]** The state presented evidence at trial that once Steele became aware that A.M. had children, he went to their school, arrested three children, and had their lockers searched. One of those children was R.M. Steele took R.M. into custody by handcuffing him and placing him in the caged back seat of a police cruiser.

*State v. Steele,* 138 Ohio St. 3d 1 (2013).  The Ohio Supreme Court then reversed the judgment of the Court of Appeals and "remand[ed] the cause to the First District Court of Appeals for consideration of the additional assignments of error that were mooted by its original holding." *Id.*

On remand the First District considered the four remaining, previously mooted, assignments of error.  As to the sufficiency of evidence assignment, it wrote

> Steele first challenges the sufficiency of the evidence in support of his abduction convictions under R.C. 2905.02(A)(1) and 2905.02(A)(2), respectively.  The Ohio Supreme Court implicitly overruled Steele's sufficiency argument in *State v. Steele,* 2013-Ohio-2470 (June 18, 2013).  As it pertains to the R.C. 2905.02(A)(1) charge, the court determined that Steele had taken R.M. into custody when he took the child from school, in handcuffs, and transported him to a police station in "the caged back seat of a police cruiser." *Id*. at ¶ 4. The court further determined that "there is nothing in the record to support the proposition that Steele had anything even approaching probable cause to arrest when he took • • • [RM.] out of school in handcuffs." *Id*. at ¶ 35. Thus, we are compelled to conclude that there was sufficient evidence to support Steele's conviction for abduction under R.C. 2905.02(A)(1). See *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

*State v. Steele*, Case No. C-100637 (1ˢᵗ Dist. Dec. 12, 2013)(unreported, copy at ECF No. 3, Exh. 32, PageID 307, et seq.)

Steele again appealed to the Ohio Supreme Court, but did not raise insufficient evidence as a proposition of law. Instead he claimed that as a matter of law "[i]t is a violation of the Due Process Clause to treat the offense of abduction as a strict liability offense when it is applied to a

police officer that makes an arrest without probable cause." (Memorandum in Support of Jurisdiction, ECF No. 3, Exh. 34, PageID 317.)  The Ohio Supreme Court declined jurisdiction on May 14, 2014 (Entry, ECF No. 3, Exh. 36, PageID 339).

In the meantime, Steele had filed a motion for reconsideration in the First District, claiming the court of appeals was required to "analyze the evidence that relates to what the defendant knew at the time Maxton was detained, otherwise the abduction offense is treated as a strict liability offense for police officers that make arrests without probable cause."  (Motion, ECF No. 3, Exh. 37, PageID 340.)  The First District set aside its December 13, 2013, judgment but then overruled the sufficiency of the evidence of abduction assignment using the same language it had used in its prior decision.  *State v. Steele*, Case No. 100637 (1st Dist. Jan. 29, 2014)(unreported, copy at ECF No. 3, Exh. 39, PageID 354 et seq.)  Steele again appealed to the Ohio Supreme Court, but that court again declined jurisdiction (Entry, State Court Record, ECF No. 3, Exh. 43, PageID 400).

Steele's claim is that the First District affirmed his abduction convictions without examining the trial record.  He asserts in his Reply that he made the following argument in his Motion for Reconsideration to the First District, "[t]he remand to address the sufficiency of the evidence argument requires this court to address the evidence for each and every element of the offense, including the requisite mental state."  (Reply, ECF No. 16, PageID 1879, citing "APX, Exhibit 37, Doc. No. 3, PageID 326.")  What actually appears in the State Court Record at PageID 326 is a page of the First District's Judgment of December 12, 2013.  Obviously, the purportedly quoted language does not appear at the cited place.

The quoted language actually appears in the body of the Motion and concludes "[t]hus this Court is required to address what Steele knew and when he knew it.  If this Court fails to

address the requisite mental state, at the time Maxton was arrested, this Court is treating the abduction offenses as strict liability offenses." (Motion for Reconsideration, ECF No. 3, Exh. 37, PageID 343.) That is a very different argument from claiming, as Steele does in his Reply, that *Jackson supra,* requires an appellate court, in reviewing a sufficiency claim, to follow some specified process and then "show its work" by producing an opinion that shows it followed the required steps.

Steele claims in conclusory fashion that "failure to examine the trial court record to determine evidence sufficiency was an unreasonable application of *Jackson v. Virginia,* (Reply, ECF No. 16, PageID 1880). However, his Reply does not point to any portion of the *Jackson* decision in which the Supreme Court mandated that an appellate court prove it had reviewed the whole record. Steele admitted that the trial court record was in fact before the First District when it decided the case on remand (Motion for Reconsideration, State Court Record, ECF No. 3, Exh. 37, PageID 346: "There is a sufficient record for this Court to examine Steele's mental state at the time he made the arrest . . .") Nothing in *Jackson* requires a state appellate court to memorialize its sufficiency finding in a particular way. Steele's first sub-claim is therefore without merit.

**Sub-claim Two: Lack of Sufficient Notice and Opportunity to Defend**

Steele also claims he lacked constitutionally sufficient notice that the Ohio Supreme Court was going to "decide" his sufficiency of the evidence claim. This claim centers on the language in the First District's decision on remand that "[t]he Ohio Supreme Court implicitly overruled Steele's sufficiency arguments . . ." (1st Dist. Judgment Entry of Jan. 29, 2014, ECF

No. 3, Exh. 39, PageID 355).

That language should not be overread. The First District clearly understood that the sufficiency of the evidence question had been remanded to it for its decision in the first instance. Immediately before the quoted language from the Supreme Court, the First District wrote:

> It is necessary to address the issues on remand from the Ohio Supreme Court that we had held to be moot in Steele's direct appeal to this court. Specifically, we must address (1) whether defendant-appellant Julian Steele's abduction convictions were supported by sufficient evidence. . . .

*Id.* at PageID 354-55. Thus the First District knew it had to decide the assignment of error. There is nothing unconstitutional in its choice to quote language from the Ohio Supreme Court opinion that accurately reflects what is in the record and embodies sufficient facts to support the conclusion that there was sufficient evidence. The Ohio Supreme Court knew it had not decided the issue because it remanded the assignment of error as undecided. The First District knew the Ohio Supreme Court had not decided the issue as it says expressly that it must decide if there was sufficient evidence. It does not treat the Supreme Court's language as somehow establishing the law of the case or the "implicit overrul[ing]" as somehow part of the mandate. Rather, it decided the sufficiency of the evidence question itself but quoting Ohio Supreme Court observations on the facts.

Moreover, Steele provides no authority for the proposition that he was entitled to any more opportunity to defend. He had made his defense to the abduction charges at trial. He had appealed, raising and briefing the sufficiency of the evidence question. That assignment of error was first mooted by the First District, then rendered unmoot by the Ohio Supreme Court and remanded, placing Steele in the same position he was in before the State of Ohio won reversal in the Ohio Supreme Court. The Constitution does not even mandate a direct appeal in the first

instance. *McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d 339, 355 (6th Cir. 2005). "Due process does not require a State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120 (1995). *A fortiori*, it does not mandate an opportunity to re-brief an assignment of error on remand from a state supreme court. Steele's second sub-claim is without merit.

**Sub-claim Three: The Abduction Convictions Are Not Supported by Sufficient Evidence**

**Standard for Insufficiency of the Evidence Claims**

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which

determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship*, *supra*. A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Steele's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict *under Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir.

2011)(en banc); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012). Notably, "a court may

sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v.*

*Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility of
> the jury -- not the court -- to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d
> 311, 313 (2011) (per curiam). And second, on habeas review, "a
> federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal
> court disagrees with the state court. The federal court instead may
> do so only if the state court decision was 'objectively
> unreasonable.'" Ibid. (quoting Renico v. Lett, 559 U. S. ___, ___,
> 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012)(per curiam).

The Warden raises no procedural defenses to this claim, but defends on the merits

(Supplemental Return, ECF No. 15, PageID 1860).

**The Abduction Charges**

Steele was convicted by a jury of violating Ohio Revised Code § 2905.02(A)(1) and

(A)(2) which provide

> (A) No person, without privilege to do so, shall knowingly do any
> of the following:
>
> (1) By force or threat, remove another from the place where the
> other person is found;

> (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear;

Steele begins by making the point that neither of these crimes is a strict liability crime. Each requires that the alleged offender acted "knowingly."  Steele's argument is that he cannot have acted knowingly because he was following police policy:

> A police officer that acts in accordance to policy cannot have the mental state of "knowingly" to commit a criminal offense because their mental state is to follow police policy. As a result, Petitioner, as a police officer whose actions are consistent with policy, could not have had the requisite mental state to criminally abduct Maxton.

(Reply, ECF No. 16, PageID 1884.)  That is not the law.  Rather, the Ohio Supreme Court aptly summarized the law of privilege for a police officer making an arrest when it wrote:

> A police officer has a right conferred by law to execute a warrantless arrest of any person who the police officer has reasonable cause to believe is guilty of certain enumerated offenses, including theft offenses and offenses of violence. R.C. 2935.03(B)(1). A police officer has reasonable or probable cause to arrest when the events leading up to the arrest, "viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense. *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, T.D. 3686 (1925). If an arrest is made without probable cause, the arrest is constitutionally invalid. *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974). . . .
>
> [A] police officer is not automatically stripped of statutory privilege and exposed to criminal liability if a court finds in hindsight that the officer made an arrest on less than probable cause. When looking at a police officer's liability in the *civil* context, privilege is lost when "a reasonable official would understand that what he is doing violates [a clearly established]

> right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034,
> 97 L.Ed.2d 523 (1987). We find this principle to be applicable to
> the context of a police officer's authority to arrest, pursuant to R.C.
> 2935.03, and correspondingly, the officer's "privilege" as defined
> in R.C. 2901.01(A)(12). Accordingly, a police officer does not lose
> the privilege to arrest merely because probable cause is lacking.
> However, the police officer loses the privilege to arrest when a
> reasonable police officer would understand that probable cause is
> lacking.

*State v. Steele,* 138 Ohio St. 3d 1 (2013). Steele offers no authority suggesting this is not a correct statement of the law involved.

**The Evidence**

In his last set of Objections, Steele asserted that the trial record is "full of facts related to what [he] was thinking prior to making a decision to arrest."  (ECF No. 11, PageID 551.) However, counsel had given no record reference to those facts, either in the Petition or the Objections.  The Magistrate Judge accordingly ordered Steele to "file a reply which must contain record references to any and all testimony on which Petitioner relies to show a violation of 28 U.S.C. § 2254(d)(2)." (Order, ECF No. 13, PageID 556.)  In his Reply, Steele has filed numerous references to (1) a secretly-recorded conversation between Steele and Police Officer Robert Randolph (Reply, ECF No. 16, PageID 1883-84, 1897-1932[2]) and the testimony of Detective Calvin Mathis (*Id.* at PageID 1884, 1886-90).  There is no testimony from Steele about probable cause or what he was thinking at any given time because he did not testify at all.

The State's first witness at trial was Detective Calvin Mathis (Trial Tr. ECF No. 14-1,

---

[2] The document filed at ECF No. 17-1 appears to be a transcript of that conversation.  As filed, it is not authenticated in any way.  It is not part of the State Court Record filed by the Warden and Petitioner has not moved to expand that record.  However, assuming the authenticity of the transcript as filed here, the conversation was heard by the jury and there is no bar to its being considered here arising from *Cullen v. Pinholster,* 563 U.S. 170 (2011).

PageID 919). In the spring of 2009, he worked with Detective Steele. *Id.* at PageID 920. At that time there had been a series of aggravated street robberies in the Northside area of Cincinnati to which Steele was assigned. *Id.* Mathis and Steele had an apartment they rented together at 5720 Winton Road, Apartment 305. *Id.* at PageID 921. Mathis identified an arrest report for Ramone Maxton's arrest that is in issue. *Id.* at PageID 927. Steele asked Mathis to go with him to interview Ramone Steele. *Id.* at PageID 937. Other than the fact that the suspect was identified as a black male, there was nothing to lead Mathis to believe Ramone Maxton could have been involved in the robbery of Anthony Barrett. *Id.* at PageID 940-41. Likewise there was nothing in the description of the person who robbed Todd Bronnert that led Mathis to believe the suspect could have been Ramone Maxton. *Id.* at PageID 946-47.

Mathis went with Steele to take three young boys into custody at Riverside Academy on May 7, 2009. *Id.* at PageID 951. All three, including Ramone Maxton, were taken to the police district station in handcuffs in the rear of police cruisers. *Id.* at PageID 953. Mathis was of the opinion that, even though these individuals were confined in the rear of police cruisers from which they could not alight on their own, they were not under arrest. *Id.* at PageID 956. On their way to pick up these three minors, Steele told Mathis nothing that would constitute probable cause for arrest. *Id.* at PageID 983.

Assistant Prosecuting Attorney Meghan Shanahan presented the aggravated robbery case against Marcus Miller to the grand jury. She learned from Steele that a license plate seen on a car under suspicion in connection with these robberies came back registered to Alicia Maxton. *Id.* at PageID 1039. Steele told her it was his experience that car used for this kind of crime were often being used by the children of the registered owner. *Id.* Ramone Maxton, Lamont Green, and Anthony Griffin were identified by Steele as teenage boys living with Alicia Maxton.

15

*Id.* at PageID 1039-40. After getting the minors pulled out of class and taking them to District 5, Steele told Shanahan he immediately excluded Green as a suspect. *Id.* at PageID 1042. Ramone denied any involvement and Steele told him that if he didn't tell Steele what Steele "want[ed] to hear about these robberies, I am going to charge your mother. I am going to charge you, I am going to lock your mother up, and she is going to get convicted of this." *Id.* at PageID 1042-43. This persuaded Ramon to admit he was in the car that night. *Id.* at PageID 1043. Then he went to Lamont Green who denied Ramone was involved. *Id.* at PageID 1044.

Steele told Shanahan that Alicia Maxton came in the next morning and brought her boyfriend, Marcus Miller, whom she accused of the robberies. *Id.* at PageID 1046. During this conversation before Shanahan presented the Miller case to the grand jury on May 15, 2009, Steele told Shanahan on three occasions that he "knew Ramone was innocent, but I had to make sure Alicia cooperated with this. He [Steele] repeatedly told me he knew that Ramone Maxton had nothing to do with these aggravated robberies." *Id.* at PageID 1047.

Immediately after talking to Steele, Shanahan learned from Alicia Maxton that Ramone was still locked up. *Id.* at PageID 1051. Ms. Shanahan recounted what happened next:

> I went back into what we call the bubble, the room where Julian
> Steele was sitting. And I asked him in a very aggressive manner:
> Under what theory and in what world he thought that it was
> appropriate to leave a boy locked up for eight days when he knew
> that child was innocent and had nothing do with these crimes.
>
> Q. And what did he say?
>
> A. Again, I was very aggressive and, therefore, he was very
> defensive. He immediately said, well, you know, I wasn't sure that
> he didn't have anything to do with it. And I said, what are you
> talking about? You told me three times you knew that he was
> innocent. And he said, well, I was 80 to 90 percent sure that he
> didn't have anything to do with it, but I wasn't completely sure.

> I said, he told you he had nothing to do with it. Anthony Griffin told you that he had nothing to do with it. His mother told you that he had nothing to do with it. What left any question? And he went on to say, well, Ramone knew how much money they had gotten in the crime and how it went down. And I said that's because Ramone Maxton and his mother told you that these two perpetrators came home and bragged about their crime. That is how Ramone knew about how much money the two actual perpetrators got and how the crime had gone down. I said so why did you think that he had anything to do with this? Why did you leave him locked up? And he just looked at me and said, "well" -- and that was it.

*Id.* at PageID 1052-53. She also testified that what Steele had done to Ramone Maxton would be "clearly" considered placing him in custody under the law of Ohio. The jury later learned from Alicia Maxton that Steele had a sexual motive for keeping Ramone in jail and that by the time he talked to Shanahan, he had already persuaded Ms. Maxton to perform oral sex on him. *Id.* at PageID 1381.

The question of whether an arresting officer had probable cause to make an arrest is an objective question, not a subjective one. Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge "were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). In general, the existence of probable cause is a jury question unless there is only one reasonable determination possible. *Yancey v. Carroll County, Ky.*, 876 F.2d 1238 (6th Cir. 1989). Probable cause is to be assessed from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001), *quoting Graham v. Connor*, 490 U.S. 386, 394 (1989).

"On habeas review pursuant to § 2254, a 'court faced with a record of historical facts that supports conflicting inferences [and *a fortiori* findings] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of

17

the prosecution, and must defer to that resolution.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th

Cir. 2012), *quoting McDaniel v. Brown*, 558 U.S. 120 (2010).  From the testimony it heard, the

trial jury concluded Steele took Ramone Maxton into custody without probable cause and

therefore lost the immunity which a police officer has when he arrests with probable cause.  The

First District's affirmance, though summary and couched in words quoted from the Ohio

Supreme Court's decision, resolves the probable cause question against Steele.  Steele has failed

to show that decision was an unreasonable determination of the facts in light of the evidence

presented.  Therefore the Third Sub-claim of the First Ground for Relief should be dismissed

with prejudice.


**Conclusion**


Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the

First Ground for Relief be dismissed with prejudice.  The Magistrate Judge has already

recommended that the other Grounds for Relief be similarly dismissed and Petitioner filed no

objections.  Because reasonable jurists would not disagree with this conclusion, Petitioner should

be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any

appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma*

*pauperis*.


September 26, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).