**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| Julian T. Steele, | Case No. 1:15-cv-349 |
| Petitioner,[1] | |
| | Judge Michael R. Barrett |
| v. | Magistrate Judge Michael R. Merz |
| Warden, | |
| London Correctional Institution, | **ORDER** |
| Respondent. | |

This matter is before the Court on the May 4, 2016 Report and Recommendations ("initial R&R") issued by the Magistrate Judge (Doc. 6), as well as the September 26, 2016 Substituted Report and Recommendations ("substituted R&R") on First Ground for Relief issued by the Magistrate Judge (Doc. 18).[2]

## I. PROCEDURAL BACKGROUND

On August 24, 2010, Julian T. Steele, a former Cincinnati Police Officer, was convicted by a jury of two counts of abduction (Ohio Rev. Code § 2905.02(A)(1) and 2905.02(A)(2))[3] and one count of intimidation (Ohio Rev. Code § 2921.03(A)). (Doc. 3 (Exh. 3) PAGEID 31–36). All three counts carried a firearm specification. (*Id.*). On

---

[1] Petitioner is no longer in custody. *See* Ohio Department of Rehabilitation & Correction, Offender Details, located at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Results (last visited 03/14/2022).

[2] The parties were given proper notice under Fed. R. Civ. P. 72(b), including notice that the parties would waive further appeal if they failed to file objections to the Report and Recommendations in a timely manner. *See United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). Recently, however, the Sixth Circuit clarified that failure to object is not a waiver, but instead a *forfeiture*. *Berkshire v. Dahl*, 920 F.3d 520, 530 (6th Cir. 2019) ("Although our cases often use the terms interchangeably, '[w]aiver is different from forfeiture.' Waiver is affirmative and intentional, whereas forfeiture is a more passive 'failure to make the timely assertion of a right[.]'") (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

[3] *See infra* page 12.

September 14, 2010, the trial court imposed an aggregate prison sentence of five years, followed by five years of community control. (Doc. 3 (Exh. 4) PAGEID 41–44). The Ohio First District Court of Appeals eventually determined that the firearms specifications were not supported by sufficient evidence and vacated the sentence imposed. (Doc. 3 (Exh. 39) PAGEID 354–58). On August 6, 2014, Steele was resentenced to a prison sentence of four years, followed by five years of community control. (Doc. 3 (Exh. 45) PAGEID 405–07).

Steele, who is represented by counsel, filed his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on May 27, 2015. (Doc. 1). The Magistrate Judge's initial R&R (Doc. 6) recommended, as to all ten grounds for relief, that Steele's petition be dismissed with prejudice and that a certificate of appealability[4] be denied. Petitioner filed an objection, asking the Court to "overrule the Report & Recommendations **as it relates to ground one**." (Doc. 8 PAGEID 537 (emphasis added)).[5] Ground One[6] relates to whether the "abduction" convictions—as opposed to the claim made in Ground Four[7] concerning

---

[4] *See* 28 U.S.C. 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'") (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020). "Crucially, in applying this standard, a court must consider *not only* the merits of the underlying constitutional claim *but also* any procedural barriers to relief." *Id.* (citing, *inter alia*, *Buck v. Davis*, --- U.S. ---, 137 S.Ct. 759, 777 (2017)) (italics in original).

[5] Alternatively, Steele asked the Court to issue a certificate of appealability as to Ground One. (Doc. 8 PAGEID 537).

[6] "**GROUND ONE:** The Abduction Convictions Violated The Due Process Clause Of The Fifth And Fourteenth Amendment Of The U.S. Constitution Because There Was Insufficient Evidence To Establish Each And Every Element Of The Offense Of Abduction Pursuant To O.R.C. § 2905.02 Beyond A Reasonable Doubt." (Doc. 1 PAGEID 8–9).

[7] "**GROUND FOUR:** The Intimidation Conviction Violated The Due Process Clause Of The Fifth And Fourteenth Amendment Of The U.S. Constitution Because There Was Insufficient Evidence To Establish

the "intimidation" conviction—violated federal due process. The undersigned recommitted the matter to the Magistrate Judge (Doc. 9), who then issued a supplemental R&R (Doc. 10) on July 6, 2016, which again recommended that Steele's petition be dismissed with prejudice and that a certificate of appealability be denied. Steele filed an objection to the supplemental R&R, asking the Court to "overrule the Supplemental R&R **as it relates to ground one**." (Doc. 11 PAGEID 552 (emphasis added)).[8] The undersigned again recommitted the matter to the Magistrate Judge. (Doc. 12).

The Magistrate Judge followed with an "Order to Supplement the Record and Withdrawing, in Part, Prior Reports and Recommendations" on August 16, 2016 (Doc. 13), which included the following preface:

> Steele's first argument in the Second Objections is that both the Ohio Supreme Court's and the First District's findings of fact on the sufficiency of the evidence, particularly on the *mens rea* element, are unreasonable determinations of the facts based on the evidence of record. This Court should then award habeas relief under 28 U.S.C. § 2254(d)(2) because the state courts have made a "decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceedings."
>
> Although Steele asserts the trial record is "full of facts related to what [he] was thinking prior to making a decision to arrest," (ECF No. 11, PageID 551), his counsel gives no record references to those facts. There are also no record references in the petition. After Respondent filed the State Court Record, Petitioner never filed a reply at all, much less one with record references. Finally, the First Objections also have no record references.
> When the Court turned to examine the trial record itself on this § 2254(d)(2) claim, it discovered that the trial transcripts had not been filed as part of the State Court Record (See ECF No. 3, PageID

---

Each And Every Element Of The Offense Of Intimidation Pursuant To O.R.C. § 2921.03 Beyond A Reasonable Doubt." (Doc. 1 PAGEID 10).

[8] Steele again asked the Court, in the alternative, to issue a certificate of appealability as to Ground One. (Doc. 11 PAGEID 552).

3

18). To this extent, the Return does not comply . . . with Habeas Rule 5 . . . .

**It would be inappropriate for this Court to decide a sufficiency of the evidence claim which depends on the trial record without having the full trial transcript before it.**

(Doc. 13 PAGEID 554–55 (footnote omitted) (emphasis added)). To put things right, the Magistrate Judge withdrew both the initial R&R (Doc. 6) "**to the extent it deals with Ground for Relief 1**"[9] and the supplemental R&R (Doc. 10). (Doc. 13 PAGEID 555 (¶ 1) (emphasis added)). He then ordered Respondent to file an amended answer that included a "complete transcript of the trial testimony" in compliance with Rule 5 of the Rules Governing Section 2254 Cases. (*Id.* PAGEID 556 (¶ 2)). The Magistrate Judge also ordered Steele to file a reply that contained record references "to any and all testimony on which [he] relies to show a violation of 28 U.S.C. § 2254(d)(2)." (*Id.* PAGEID 556 (¶ 3)).

Respondent filed the trial transcript (Doc. 14) and refiled its original answer (curiously addressing *all* grounds for relief) with citation to the trial transcript as to Steele's abduction convictions (Ground One). (*Cf.* Doc. 15 PAGEID 1864–65 *with* Doc. 4 PAGEID 501–02). Steele filed a reply (Doc. 16) that addressed not only his abduction convictions (Ground One), but also his intimidation conviction (Ground Four). The Magistrate Judge thereafter issued a substituted R&R as to Steele's First Ground for Relief. (Doc. 18). Petitioner filed objections (Doc. 19) to the substituted R&R.[10]

---

[9] On this point the Magistrate Judge noted, "Steele filed no objections to the recommended disposition of the other [nine] grounds for relief." (Doc. 13 PAGEID 555 n.2).

[10] As before, Steele asks the Court to issue a certificate of appealability in the event his objections are overruled. (Doc. 19 PAGEID 1970).

4

## II. STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1).

General objections are insufficient to preserve any issue for review. "A general objection to the entirety of the magistrate[ judge]'s report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate[ judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."); *Renchen v. Comm'r of Soc. Sec.*, No. 1:13-cv-752, 2015 WL 1097349, at *6 (S.D. Ohio Mar. 11, 2015) (plaintiff's objection "is an almost verbatim recitation of the argument presented to and considered by the Magistrate Judge" and therefore need not be reconsidered) (citing *Howard*, 932 F.2d at 508–09).

## III. DISCUSSION

**May 4, 2016 initial R&R (Doc. 6).** As noted, the initial R&R recommended that all ten grounds for relief pled in Steele's petition be dismissed with prejudice and that Steele be denied a certificate of appealability. Steele objected to the Magistrate Judge's recommendation as to Ground One only. Ground One claims that the "abduction"

convictions violated his due process guaranties. He did not object to the Magistrate Judge's recommendation as to Grounds Two through Ten, to include Ground Four, which makes the same claim as Ground One but with respect to his "intimidation" conviction. The Magistrate Judge has since withdrawn his initial recommendation as to Ground One (only) and filed a substituted recommendation as to Ground One (only). What remains for review regarding the initial R&R, then, is the Magistrate Judge's recommendations as to Grounds Two through Ten.

Steele has attempted to belatedly object to the Magistrate Judge's recommendation as to Ground Four in the reply he was ordered to file as to Ground One. (*See* Doc. 16 PAGEID 1891–93). He argues that "Respondent opened the door for the Petitioner to readdress the intimidation conviction by its [Supplemental] Answer addressing the merits of Petitioner's insufficiency of evidence claim regarding the intimidation conviction." (Doc. 19 PAGEID 1952 (citing Doc. 15 PAGEID 1865–67)).

This contention is meritless. The Magistrate Judge ordered Respondent to supplement the record with the state trial transcript so the Court could properly evaluate Steele's sufficiency-of-the-evidence claim set forth in Ground One (dealing with the abduction convictions only). The fact that Respondent gratuitously refiled its Answer as to all the other ground Steele pled does not give Steele a second chance to object. Steele's time to object to the initial R&R expired on May 23, 2016. (Doc. 6 (docket text)). He did not object to the Magistrate Judge's recommendation as to any ground for relief by that date save for Ground One. Thus, he has forfeited any objections to the Magistrate Judge's recommendation that Ground Four be dismissed with prejudice. *See Berkshire*, 920 F.3d at 530.

The Court has reviewed the Magistrate Judge's recommendations as to Grounds Two through Ten and finds them well-reasoned, thorough, and correct.[11] Therefore, the Court will accept and adopt the Magistrate Judge's May 4, 2016 initial R&R. Grounds Two through Ten will be dismissed with prejudice and Steele will be denied a certificate of appealability.

**September 26, 2016 substituted R&R (Doc. 18).** Magistrate Judge Merz recommends that Ground One, which Respondent defends on the merits, be dismissed with prejudice and that Steele be denied a certificate of appealability. Below is a summary of the Magistrate Judge's analysis as to the three due process subclaims that Steele presents in his reply.

**Subclaim One.** Steele argues he is entitled to habeas relief because the First District decided his insufficient evidence claims—or, in other words, affirmed his abduction convictions—without examining the trial record. He maintains that "[t]he failure to examine the trial court record to determine evidence sufficiency was an unreasonable application of *Jackson v. Virginia*."[12] (Doc. 16 PAGEID 1880). The Magistrate Judge finds this claim to be "conclusory" given that Steele fails to specify where, in the *Jackson* decision, the Supreme Court mandates that a state appellate court *prove* it reviewed the trial record. (Doc. 18 PAGEID 1940). Because Steele has conceded that the trial court

---

[11] *Cf. Thomas v. Arn*, 474 U.S. 140, 152, 153 (1985) ("There is no indication that Congress in enacting [28 U.S.C.] § 636(b)(1)(C), intended to require a district judge to review a magistrate[ judge]'s report to which no objections are filed. . . . We thus find nothing in the statute or the legislative history that convinces us that congress intended to forbid a rule such as the one adopted by the Sixth Circuit. . . . It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate[ judge]'s reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution.").

[12] *Jackson v. Virginia*, 443 U.S. 307 (1979).

record was, in fact, before the First District when it decided his case on remand from the Ohio Supreme Court,[13] and because nothing in *Jackson* requires a state appellate court to memorialize its sufficiency finding "in a particular way,"[14] the Magistrate Judge concludes that Steele's first subclaim is without merit. (*Id.*).

The Court finds no error in the Magistrate Judge Merz's analysis. Furthermore, Steele's objection to the recommendation is an almost verbatim recitation of the argument presented to—and rejected—by the Magistrate Judge. (*Cf.* Doc. 16 PAGEID 1877–80 *with* Doc. 19 PAGEID 1954–56). Under *Aldrich* and *Renchen*, it is properly overruled.

**Subclaim Two.** Steele argues he is entitled to habeas relief because he did not receive constitutionally adequate notice that the Ohio Supreme Court (as opposed to the First District on remand) would "decide" his sufficiency-of-the-evidence claim and, therefore, he was denied a meaningful opportunity to defend. (Doc. 16 PAGEID 1880 ("[A] person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend.") (quoting *Jackson*, 443 U.S. at 314)). In support, he refers the Court to the First District's January 29, 2014 Judgment Entry, which reads in pertinent part:

> Steele first challenges the sufficiency of the evidence in support of his abduction convictions under R.C. 2905.02(A)(1) and 2905.02(A)(2). **The Ohio Supreme Court implicitly overruled Steele's sufficiency arguments in *State v. Steele*, Slip Opinion No. 2013-Ohio-2470** (June 18, 2013). As it pertains to the R.C. 2905.02(A)(1) charge, the court determined that Steele had taken R.M. into custody when he took the child from school, in handcuffs, and transported him to a police station in "the caged back seat of a police cruiser." *Id.* at ¶ 4. The court further determined that "there is

---

[13] (Doc. 18 PAGEID 1940 (quoting Doc. 3 PAGEID 346)).

[14] In the Magistrate Judge's words, Steele argues that *Jackson* "requires an appellate court, in reviewing a sufficiency claim, to follow some specified process and then 'show its work' by producing an opinion that shows it followed the required steps." (*See* Doc. 18 PAGEID 1940).

> nothing in the record to support the proposition that Steele had anything even approaching probable cause to arrest when he took * * * [R.M.] out of school in handcuffs." *Id.* at ¶ 35. Thus, we are compelled to conclude that there was sufficient evidence to support Steele's conviction for abduction under R.C. 2905.02(A)(1). See *State v. Jenks* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
>
> In regard to the R.C. 2905.02(A)(2) charge, **the Supreme Court determined that** Steele had knowingly coerced a false confession from R.M., and that Steele had used the confession to form the basis for a criminal complaint that culminated with R.M. being placed in a juvenile detention facility. And R.M. testified that he was fearful at the time. This was sufficient evidence to sustain a conviction for the R.C. 2905.02(A)(2) charge. *See id.* **Based on the Supreme Court's decision in *Steele***, we overrule Steele's first assignment of error.

(Doc. 3 (Exh. 39) PAGEID 355 (emphases added by Petitioner Steele)).

The Magistrate Judge cautions that this language should not be "overread." He refers the reader to the immediately preceding paragraph, which makes clear that the First District understood that the sufficiency-of-the-evidence question had been remanded to it for its decision in the first instance:

> Since we have set aside our prior judgment entry, in addition to addressing the issue raised in Steele's motion for reconsideration **it is necessary to address the issues on remand from the Ohio Supreme Court that we had held to be moot in Steele's direct appeal to this court. Specifically, we must address (1) whether defendant-appellant Julian Steele's abduction convictions were supported by sufficient evidence**, (2) whether Steele's abduction convictions were against the manifest weight of the evidence, (3) whether the trial court abused its discretion in failing to declare a mistrial, and (4) whether trial counsel was ineffective. **These arguments were raised in Steele's first**, second, third and fifth **assignment**s **of error**, respectively.

(Doc. 18 PAGEID 1941 (quoting Doc. 3 (Exh. 39) PAGEID 354–55)) (emphases added).

The Magistrate Judge explains that there is "nothing unconstitutional in [the First District's] choice to quote language from the Ohio Supreme Court opinion that accurately reflects

9

what is in the record and embodies sufficient facts to support the conclusion that there was sufficient evidence." (Doc. 18 PAGEID 1941). He notes further that the First District "does not treat the Supreme Court's language as somehow establishing the law of the case or the 'implicit overrul[ing]' as somehow part of the mandate." (*Id.*). The Magistrate Judge concludes that the First District decided the sufficiency-of-the-evidence question *itself*, but by "quoting Ohio Supreme Court observations on the facts." (*Id.*).

In addition, the Magistrate Judge explains that Steele was not entitled to any *more* opportunity to defend. Steele defended against the abduction charges at trial and thereafter briefed the sufficiency-of-the-evidence question as an assignment of error on appeal[15]. The First District found that assignment of error (and others) moot based on its ruling that an improper jury instruction had been given as to the abduction counts and its decision to vacate the firearm-specific sentence as to the intimidation conviction.[16] Steele sought reconsideration of the First District's ruling to affirm his intimidation conviction[17], while the State of Ohio sought reconsideration of the First District's decision to set aside the abduction convictions[18]. These motions were overruled[19], and the Ohio Supreme Court eventually determined that the First District correctly upheld Steele's intimidation conviction but incorrectly held that the jury instruction as to the abduction counts was plain error[20]. Thus, the case was remanded back to the First District "for consideration of

---

[15] (Doc. 3 (Exh. 6) PAGEID 53–58).

[16] (Doc. 3 (Exh. 8) PAGEID 95–98 (¶¶ 18–28)).

[17] (Doc. 3 (Exh.11) PAGEID 101–05).

[18] (Doc. 3 (Exh.12) PAGEID 106–14).

[19] (Doc. 3 (Exh.14) PAGEID 118–20).

[20] (Doc. 3 (Exh. 29) PAGEID 291–304, (Exh. 30) PAGEID 305).

the additional assignment of error that were mooted by its original holding." (Doc. 3 (Exh. 29) PAGEID 304 (published at *State v. Steele*, 138 Ohio St. 3d 1, 2013-Ohio-2470, 3 N.E.3d 135, at ¶ 38 (Ohio 2013))). At this point in time, the Magistrate Judge notes, Steele was in the *same* position he was before the State of Ohio won reversal in the Ohio Supreme Court. "Because due process does not require a State to provide appellate process at all," the Magistrate Judge reasons that it likewise does not mandate an opportunity to re-brief an assignment of error on remand from a state supreme court. (Doc. 18 PAGEID 1942 (quoting *Goeke v. Branch*, 514 U.S. 115, 120 (1995))).

Again, the Court finds no error in the Magistrate Judge Merz's analysis. And, as before, Steele's objection is an almost verbatim recitation of the argument presented to and rejected by the Magistrate Judge. (*Cf.* Doc. 16 PAGEID 1880–81 *with* Doc. 19 PAGEID 1957–58). Under *Aldrich* and *Renchen*, then, it, too, is properly overruled.

**Subclaim Three.** Steele argues he is entitled to habeas relief because his abduction convictions were not supported by sufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a federal constitutional (due process clause) claim. *See Jackson*, *supra*, 443 U.S. at 324. In a sufficiency-of-the-evidence case, deference must be given (first) to the jury's verdict under *Jackson*, 443 U.S. at 319, and (then) to the appellate court's consideration of that verdict as required by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (Pub. L. No. 104–132, 110 Stat. 1214) (codified at 28 U.S.C. § 2254(d)[21]).

---

[21] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

11

A jury convicted Steele of violating Ohio. Rev. Code § 2905.02(A)(1) and (A)(2), which provide:

> No person, without **privilege** to do so, shall **knowingly** do any of the following:
>
> (1) By force or threat, remove another from the place where the other person is found;
>
> (2) By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]

(Emphases added). Steele insists that whether he acted "knowingly" turns on whether he was following department policy. (Doc. 16 PAGEID 1884 ("A police officer that acts in accordance to policy cannot have the mental state of 'knowingly' to commit a criminal offense because their mental state is to follow police policy. As a result, Petitioner, as a police officer whose actions are consistent with policy, could not have had the requisite mental state to criminally abduct [R.M.].")).[22] But the Magistrate Judge clarifies that the law of "privilege" is the central issue, which, instead, focuses on "whether a reasonable police officer would understand that probable cause is lacking."[23] (Doc. 18 PAGEID 1946 (quoting *State v. Steele*, *supra*, 3 N.E.3d 135, at ¶ 28)).[24]

---

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

[22] Steele's (incorrect) citation to the then-in-place statutory definition of "knowingly" is irrelevant to his sufficiency-of-the-evidence claim. (*See* Doc. 16 PAGEID 1882).

[23] As the Magistrate Judge explains, whether an officer had probable cause to arrest is an objective question, not a subjective one. (Doc. 18 PAGEID 1949). Moreover, probable cause must be assessed from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." (Doc. 18 PAGEID 1949 (quoting *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)))).

[24] In the context of a police officer's authority or "privilege" to arrest, the Ohio Supreme Court explained:

In his objections to the Magistrate Judge's since-withdrawn supplemental R&R, Steele insisted that "[t]he trial record is full of facts related to what [he] was thinking prior to making a decision to arrest." (See Doc. 11 PAGEID 551).[25]  As discussed, on recommittal the Magistrate Judge discovered that the trial transcript had not been included (as required by Rule 5) as part of Respondent's original answer.  The Magistrate

---

> [I]n order to convict a defendant for the offense of abduction, the finder of fact must determine that the defendant removed and/or restrained the victim by force or threat "without privilege to do so."  R.C. 2905.02(A).  "Privilege" is defined as "an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."  R.C. 2901.01(A)(12).  A police officer has a right conferred by law to execute a warrantless arrest of any person who the police officer has reasonable cause to believe is guilty of certain enumerated offenses, including theft offenses and offenses of violence.  R.C. 2935.03(B)(1).  A police officer has reasonable or probable cause to arrest when the events leading up to the arrest, "viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.  *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).  Probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense.  *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), citing *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925).  If an arrest is made without probable cause, the arrest is constitutionally invalid.  *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).
>
> . . . .
>
> . . . . [A] police officer is not automatically stripped of statutory privilege and exposed to criminal liability if a court finds in hindsight that the officer made an arrest on less than probable cause.  When looking at a police officer's liability in the *civil* context, privilege is lost when "a reasonable official would understand that what he is doing violates [a clearly established] right."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  **We find this principle to be applicable to the context of a police officer's authority to arrest, pursuant to R.C. 2935.03, and correspondingly, the officer's "privilege" as defined in R.C. 2901.01(A)(12).  Accordingly, a police officer does not lose the privilege to arrest merely because probable cause is lacking.  However, the police officer loses the privilege to arrest when a reasonable police officer would understand that probable cause is lacking.**

*State v. Steele*, supra, 3 N.E.3d 135, at ¶¶ 26, 28 (italics in original, bold emphasis added).

[25] This statement is somewhat anomalous given that Steele exercised his Fifth Amendment right to not testify.  (*See generally* Doc. 14-1 PAGEID 1586–87).

Judge's substituted R&R was issued in the wake of Respondent filing an amended answer—and Steele, for the first time, filing a reply—with trial record citations.

Steele relies on the cross-examination testimony of Cincinnati Police Officer Calvin Mathis, who testified on behalf of the State. (Doc. 16 PAGEID 1886–90). But the Magistrate Judge chronicles Mathis's direct examination testimony, which makes clear that a "reasonable" police officer would have understood that probable cause did *not* support the May 7, 2009 warrantless arrest of Ramone Maxton. (Doc. 18 PAGEID 1946–47).

Mathis is a 24-year department veteran, spending 16 years as an investigator. (Doc. 14-1 PAGEID 919, 935). He testified that, in the spring of 2009, Steele was investigating a series of aggravated street robberies (six in all) taking place in the Northside neighborhood of Cincinnati. (*Id.* PAGEID 920–21). Steele asked Mathis to accompany him to Riverside Academy (on May 7, 2009) to take three juveniles into custody, Ramone Maxton included. (*Id.* PAGEID 951).[26]

As the investigator, Steele would already have reviewed offense reports containing victim statements. (*Id.* PAGEID 936–38). Victims of the April 22, 2009 robbery (at 4033 Delaney) described two suspects: "Number one was a male black, 20's, 6-foot, unknown on description of hair, weight. . . . And the second one is all unknown, male black." (*Id.* PAGEID 929–32). The victim of the April 29, 2009 robbery (at 1416 Delaney) described the suspect as "Male black. Unknown. Unknown. Unknown." (*Id.* PAGEID 940–41). The

---

[26] (*See* Doc 14-1 PAGEID 937 ("I just relied on my partner to do his Northside investigations. And, you know, when we get a – how to say, quote, unquote, bad guy, and there is a possibility of some sort of danger, we get another guy with us. And this – in this case this is what happened."); *id.* PAGEID 978–79). Mathis played no role in the Northside street robberies investigation. (*Id.* PAGEID 966 (testifying "That was Detective Steele's area[.]")).

14

victim of the May 3, 2009 robbery (at 4118 Langland Street) described his two suspects as "16, 18, 6-foot and 160." (*Id.* PAGEID 945–46). The robbery victims from 1650 Blue Rock Street reported three suspects, describing the get-away driver as a "male black.". (*Id.* PAGEID 948–49). A witness driving in the area described the other two suspects as "[m]ale black, 25 to 30, 5'9', 160" and "male black, between 25, 30, 6-foot and 190." (*Id.* PAGEID 950–51). Based on his years of experience, Mathis testified that nothing in these descriptions would suggest Maxton—a juvenile who was 5'7" tall and weighed 195 pounds—to be involved, other than the isolated fact that he was a black male. (*Id.* PAGEID 928, 946–47, 950–51).

The Magistrate Judge also chronicles the testimony of then-Hamilton County Assistant Prosecutor Megan Shanahan, who presented the aggravated robbery case against Marcus Miller to the grand jury on May 15, 2009. (Doc. 18 PAGEID 1947–48). She testified that Steele admitted to her that he knew Ramone Maxton was innocent but used him to influence his mother—Alicia Maxton—to cooperate and implicate Miller. (Doc. 14-1 PAGEID 1047). Immediately after she spoke with Steele, Shanahan learned from Alicia Maxton that her son, Ramone, had been locked up at "20/20"—Hamilton County's Juvenile Youth Center—since May 7, 2009. (*Id.* PAGEID 1048–51). Furious, Shanahan confronted Steele:

> A. I went back into what we call the bubble, the room where Julian Steele was sitting. And I asked him in a very aggressive manner: **Under what theory and in what world he thought that it was appropriate to leave a boy locked up for eight days when he knew that child was innocent and had nothing do with these crimes.**
>
> Q. And what did he say?

> A. Again, I was very aggressive and, therefore, he was very defensive. He immediately said, well, you know, I wasn't sure that he didn't have anything to do with it.
>
> And I said, what are you talking about? **You told me three times you knew that he was innocent. And he said, well, I was 80 to 90 percent sure that he didn't have anything to do with it, but I wasn't completely sure.**
>
> **I said, he told you he had nothing to do with it. Anthony Griffin told you that he had nothing to do with it. His mother told you that he had nothing to do with it. What left any question?** And he went on to say, well, Ramone knew how much money they had gotten in the crime and how it went down. And I said that's because Ramone Maxton and his mother [ ] . . . told you that these two perpetrators came home and bragged about their crime. That is how Ramone knew about how much money the two actual perpetrators got and how the crime had gone down.
>
> **I said so why did you think that he had anything to do with this? Why did you leave him locked up? And he just looked at me and said, "well" – and that was it.**

(*Id.* PAGEID 1052–53 (emphases added)). The Magistrate Judge also cited to the testimony of Alicia Maxton, who performed oral sex on Steele (at his request) because she believed Steele had the power to control Ramone's release. (*Id.* PAGEID 1381–83).

"On habeas review pursuant to § 2254, a 'court faced with a record of historical facts that supports conflicting inferences [and *a fortiori* findings] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (Doc. 18 PAGEID 1949–50 (quoting *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012) (quoting *McDaniel v. Brown*, 558 U.S. 120, 133 (2010)))). In the Magistrate Judge's view, the trial jury reasonably concluded from the evidence presented that Steele took Ramone Maxton into custody without probable cause and, therefore, lost the privilege afforded to a police officer when he otherwise arrests *with* probable cause. (*Id.* at 1950). And "though

16

summary and couched in words quoted from the Ohio Supreme Court's decision," so, too, did the First District." (*Id.*). Because he has failed to show that this resolution was "an unreasonable determination of the facts in light of the evidence presented," the Magistrate Judge recommends that Steele's third subclaim be dismissed with prejudice. (*Id.*).

Once more, the Court finds no error in Magistrate Judge Merz's analysis. Also, Steele's objection is again an almost verbatim recitation of the argument presented to and rejected by the Magistrate Judge. (*Cf.* Doc. 16 PAGEID 1880–81 *with* Doc. 19 PAGEID 1957–58). Thus, under *Aldrich* and *Renchen*, it is appropriately overruled.

## IV. CONCLUSION

The Court **ACCEPTS** and **ADOPTS**: (1) the May 4, 2016 initial R&R (Doc. 6) as to Grounds Two through Ten, to which Petitioner failed/forfeited his right to object; and (2) the September 26, 2016 substituted R&R (Doc. 18) as to Ground One. Petitioner's objections (Docs. 8, 19) to these R&Rs, to the extent they discuss Ground One, are **OVERRULED**. Accordingly, the Petition (Doc. 1) is **DISMISSED** in its entirety **with prejudice**. Because reasonable jurists would not disagree with this conclusion, Petitioner is **DENIED** a certificate of appealability. The Court **CERTIFIES** that any appeal to the United States Court of Appeals for the Sixth Circuit would be objectively frivolous and, consequently, Petitioner is **DENIED** leave to appeal in forma pauperis.

**IT IS SO ORDERED**.

/s/ *Michael R. Barrett*
JUDGE MICHAEL R. BARRETT